FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 10, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KAREN KAY D., | NO:  1:18-CV-3229-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 10, 15.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d)2.

represented by Special Assistant United States Attorney Katherine Watson. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is granted and Defendant's Motion, ECF No. 15, is denied.

## JURISDICTION

Plaintiff Karen Kay D.[2] (Plaintiff), filed for supplemental security income (SSI) on December 31, 2014, alleging an onset date of October 1, 2014. Tr. 237-48. Benefits were denied initially, Tr. 143-53, and upon reconsideration, Tr. 155-61. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 13, 2017. Tr. 41-68. On November 14, 2017, the ALJ issued an unfavorable decision, Tr. 12-34, and on October 10, 2018, the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

Plaintiff was born in 1965 and was 52 years old at the time of the hearing. Tr. 237. She graduated from high school. Tr. 551. She has work experience as a cherry sorter and as a payroll clerk at a trucking company. Tr. 54, 61.

Plaintiff testified that she had back surgery in 2012 for a sciatic nerve problem. Tr. 46. The surgery was effective for the sciatic nerve issue, but she still has back pain which is getting worse. Tr. 46. She sometimes needs to lean over or find a place to sit down due to her back pain. Tr. 46-47. Sometimes when she is walking, she feels like her legs are going to "give out." Tr. 47. She uses a walker occasionally if her back is hurting or she feels like her legs are going to give out. Tr. 50. She has asthma and COPD. Tr. 52. Plaintiff also testified that she has depression and will sometimes sleep for two to four days at a time. Tr. 52. She is tired all the time and has no energy. Tr. 52. She has anxiety and PTSD. Tr. 59-60.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant

is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since December 31, 2014, the application date. Tr. 17. At step two, the ALJ found that Plaintiff has the following medically determinable impairments: spinal impairment, obesity, adrenal gland disorder, chronic obstructive pulmonary disease (COPD, also known as emphysema), affective disorder, and anxiety disorders (including post-traumatic stress disorder). Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> she can occasionally stoop, kneel, crouch, crawl, and climb. She can
> frequently balance. She should avoid concentrated exposure to hazards

and pulmonary irritants.  She has sufficient concentration, persistence, and pace to perform simple routine tasks in two-hour increments over the course of an eight-hour workday.  She can have occasional superficial contact with the general public.  This means she can work in the same room with coworkers, but not with the coordination of work activity.  She can occasionally interact with supervisors.

Tr. 20.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as an agricultural produce sorter.  Tr. 29.  Alternatively, at step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs existing in significant numbers in the national economy that Plaintiff can perform such as housekeeping cleaner, production assembler, and outside deliverer. Tr. 30.  Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since December 31, 2014, the date the application was filed.  Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for review:

1.     Whether the ALJ properly considered all of Plaintiff's impairments;

2.     Whether the ALJ properly considered Plaintiff's symptoms claims;

3.     Whether the ALJ properly considered the medical opinion evidence; and

4.      Whether the ALJ properly considered the lay witness statements. ECF No. 10 at 2.

## DISCUSSION

### A.    Diabetes

Plaintiff contends the ALJ erred by failing to assess Plaintiff's diabetes. ECF No. 10 at 3. At step two of the sequential process, the ALJ must determine whether there is a medically determinable impairment established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 416.921. A statement of symptoms, a diagnosis, or a medical opinion does not establish the existence of an impairment. *Id.* After a medically determinable impairment is established, the ALJ must determine whether the impairment is "severe," i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). Step two is not meant to identify the impairments that should be considered when determining the RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling (S.S.R.) 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Thus, the ALJ must consider the effect of all impairments, including medically determinable but non-severe impairments, in evaluating the RFC. 20 C.F.R. § 416.945(a)(2).

In January 2015, Plaintiff's treating physician noted diabetes mellitus was a new diagnosis and prescribed metformin. Tr. 531. A February 2015 lab report indicates Plaintiff's blood glucose level was 8.47%, and that a rate of greater than 6.5% is consistent with diabetes. Tr. 531. Thus, diabetes is a medically determinable impairment and should have been considered by the ALJ throughout the sequential evaluation. However, the ALJ did not mention diabetes at step two or anywhere in the decision. Tr. 15-30. Thus, the ALJ erred.

An ALJ's step two error may be harmless, even where an omitted impairment is supported by substantial evidence, if the ALJ analyzes how limitations arising from that impairment affect the claimant's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding the ALJ committed harmless error in failing to include a severe impairment at step two where that impairment's limitations were factored into the RFC); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (finding harmless error where the ALJ omitted obesity as a severe impairment but factored resulting limitations into the RFC determination). Plaintiff notes reports that Plaintiff's diabetes was not under control, Tr. 586; that her blood sugar levels were high and she had a burning sensation in her legs, Tr. 601; that her blood sugar levels were still not normal but were dropping, and that she had neuropathy in her feet, Tr. 565; and that she had to cancel a therapy appointment because her blood sugars were high and she was not feeling well, Tr. 603. ECF No. 10 at 4. However, the ALJ did not address any of these findings or consider whether they should result

in additional or increased limitations in the RFC. Because the ALJ failed to assess the medically determinable impairment of diabetes, it is not apparent that the ALJ evaluated the impact of that impairment, if any, on the RFC. Thus, the Court cannot conclude the error is harmless.[3] As a result, this matter must be remanded for consideration of the impact of diabetes on the RFC finding and throughout the sequential evaluation.

**B.    Symptom Testimony**

Plaintiff contends the ALJ improperly rejected her symptom testimony. ECF No. 10 at 15-21. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could

---

[3] The Court's conclusion that the ALJ erred by failing to discuss Plaintiff's diabetes is not a determination that diabetes is a severe impairment, nor is it a finding that the records cited indicate limitations arising from that impairment. The ALJ, not this Court, is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *see also Richardson v. Perales*, 402 U.S. 389, 400 (1971).

reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found the objective evidence is inconsistent with Plaintiff's symptom testimony. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680. As discussed *infra*, the ALJ's other reasons for finding Plaintiff's testimony regarding her physical limitations less than fully reliable are not clear and convincing reasons supported by substantial evidence. Since the medical evidence cannot be the sole reason for discrediting a claimant's symptom statements, the ALJ's rejection of Plaintiff's symptom testimony is legally insufficient.

Second, the ALJ found Plaintiff's psychological symptoms are nearly resolved with treatment. Tr. 23. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(iv); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

(determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Even if the ALJ's interpretation of the mental health treatment evidence is correct, this would not constitute a clear and convincing reason for finding Plaintiff's claimed physical impairments less reliable.

Third, the ALJ found Plaintiff's activities are inconsistent with her symptom testimony. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

1   The ALJ found Plaintiff's activity as "primary caregiver" for her mother is

2   inconsistent with her testimony regarding disabling depression and the need for

3   ambulatory assistance. Tr. 24. The ALJ noted that Plaintiff reported being a

4   caregiver for her mother since 2011 or 2012. Tr. 24, 367, 371, 382, 392, 411, 551.

5   However, there are no details in the record regarding her mother's condition or the

6   nature and extent of Plaintiff's care for her. Similarly, the ALJ observed that in

7   February 2016, Plaintiff mentioned she was busy the prior week helping a friend, but

8   the record is silent as to how Plaintiff was helping or what activities were involved.

9   Tr. 24, 607. The ALJ also found that a statement that Plaintiff was planning to keep

10  busy by packing for a move the following month demonstrates abilities inconsistent

11  with her allegations. Tr. 24, 599. However, the record does not indicate the extent

12  or nature of any packing. The lack of information about the physical and mental

13  demands of these activities means the ALJ's conclusion that they are inconsistent

14  with Plaintiff's symptoms testimony is speculative and without foundation in the

15  record.

16      The ALJ further found that Plaintiff's report that she does her own grocery

17  shopping and performs her activities of daily living is inconsistent with her

18  testimony. Tr. 24, 551. Plaintiff testified that she is able to go to the grocery store

19  but has her son or grandchildren go with her to transfer the groceries into and out of

20  the car. Tr. 49. She also testified her walking is limited by back pain and she

21  sometimes has to stop and lean over or find a place to sit down. Tr. 46-47. She

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

testified that she participates in some household chores, but "can only do a little bit and then I have to sit down." Tr. 48. Plaintiff's testimony describes reasonable qualifications consistent with her alleged limitations that would allow her to shop for groceries and perform activities of daily living as stated elsewhere in the record. This is not reasonably construed as an inconsistency making her symptom claims less reliable.

**C.    Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the opinions of treating physician, Anna Madej, M.D.; examining psychologist, N.K. Marks, Ph.D.; examining psychiatrist Greg D. Sawyer, M.D., Ph.D.; examining psychologist R.A. Cline, Psy.D.; and treating provider, Marybeth Wheeler, ARNP. ECF No. 10 at 4-15. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

### 1. *Anna Madej, M.D.*

In March 2014, Dr. Madej, a treating physician, diagnosed chronic back pain, COPD, and PTSD. Tr. 417-19. In April 2015, Dr. Madej listed diagnoses of chronic back pain/spondylolisthesis, COPD/respiratory disease, PTSD, and abnormal sweating/hyperhidrosis. Tr. 463-65. In both assessments, Dr. Madej opined that Plaintiff's back issue is severe, that her PTSD and COPD are moderate, and that Plaintiff is severely limited and unable to meet the demands of sedentary work. Tr. 418-19, 464-65. The ALJ gave minimal weight to Dr. Madej's opinions. Tr. 25.

The ALJ found that Dr. Madej's opinions lack objective support and that they must therefore be heavily reliant on Plaintiff's self-report. Tr. 26. A

physician's opinion may be rejected if it is unsupported by treatment notes. *See*

*Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). A physician's opinion

may be rejected if it is based on a claimant's subjective complaints which were

properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Fair*,

885 F.2d at 604. However, when an opinion is not more heavily based on a

patient's self-reports than on clinical observations, there is no evidentiary basis for

rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec.*

*Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

First, the ALJ noted Dr. Madej's exam findings leading up to the March

2014 opinion are unremarkable. Tr. 25 (citing Tr. 368, 371, 382-83). Indeed, Dr.

Madej's physical exams on February 24, March 11, and March 21, 2014, revealed

no abnormalities or other findings generally or of the head, neck, lungs, heart,

abdomen, pulses, or extremities. Tr. 368, 371, 382-83. Plaintiff contends that the

ALJ mischaracterized the record, citing a BMI finding indicating obesity,

Plaintiff's complaint of chest pains, Dr. Madej's review of unspecified "old

medical records" of chronic back problems, and a prescription for gabapentin for

back pain. ECF No. 10 at 7. However, the ALJ's characterization of the physical

examination findings as unremarkable in terms of Plaintiff's allegations of

disability is reasonable.

Similarly, when Plaintiff established care with Dr. Madej in February 2014, she reported a chronic cough with occasional wheezing[4] and Dr. Madej ordered spirometry testing. Tr. 25, 381-83. The ALJ noted the spirometry testing found normal respiratory functioning despite Plaintiff's tobacco use, suggesting that Dr. Madej's opinion that Plaintiff had moderate COPD in March 2014 is unsupported. Tr. 25, 424-25. Plaintiff contends the ALJ incorrectly found that the spirometry test showed normal respiratory functioning since there was a finding of mild hyperinflation with a mild COPD/emphysematous pattern. ECF No. 10 at 8; Tr. 425. However, the physician's note regarding spirometry test results state, "NORMAL SPIROMETRIC VALUES indicate the absence of any significant degree of obstructive pulmonary impairment and/or restrictive ventilatory defect" and "NORMAL DIFFUSING CAPACITY." Tr. 425. The note also indicates "increased residual volume (RV) and total lung capacity (TLC) indicate the possibility of a MILD DEGREE OF HYPERINFLATION." Tr. 425. A handwritten note also says, "agree mild COPD/emphysematous pattern." Tr. 425. The ALJ's interpretation of the record is reasonably accurate and, more importantly, the ALJ's greater point is accurate: Dr. Madej's March 2014 opinion

---

[4] The ALJ noted that Dr. Madej's review of systems on the same date indicates Plaintiff denied all respiratory symptoms, including cough and wheezing. Tr. 25, 382.

that Plaintiff has COPD of moderate severity with "breathing trouble" causing a "significant interference with the ability to perform one or more basic work-related activities," Tr. 418, is not reasonably supported by Dr. Madej's exam findings or the results of spirometry testing.

The ALJ also found Dr. Madej's March 2014 opinion that Plaintiff's back impairment is of marked severity, meaning it causes "very significant interference with the ability to perform one or more basic work-related activities," Tr. 418, is unsupported, noting that Plaintiff had not referred to any back pain symptoms during her prior treatment with Dr. Madej. Tr. 25 (citing Tr. 370-85). Plaintiff contends this is because as a new patient in February 2014, "she also had essentially no opportunity to do so." ECF No. 10 at 8. However, Plaintiff had two appointments with Dr. Madej before the date of the assessment and the ALJ accurately noted that Plaintiff did not complain of back pain during either of those visits. Tr. 25, 37-85. This further supports the ALJ's conclusion that Dr. Madej's opinion regarding the severity of Plaintiff's back pain is not based on objective findings.[5]

_____

[5] The ALJ additionally notes that Dr. Madej "did not actually diagnos[e] any spinal impairment" in the March 2014 assessment. Tr. 25. This is a minor point in light of the ALJ's other findings and not particularly persuasive.

Similarly, the ALJ observed that Dr. Madej's examinations after March 2014 do not include findings relevant to Plaintiff's allegedly disabling back impairment. Tr. 25 (citing Tr. 342, 354, 360, 504, 508, 511-12, 528-29, 532-33). The ALJ noted that Dr. Madej's exam findings on the date of the April 2015 assessment were again "wholly unremarkable." Tr. 25-26, 504. Indeed, Dr. Madej's exam on that date found Plaintiff was comfortable and in no acute distress with normal head, nose, mouth, neck, lungs, heart, abdomen, pulses, and extremities. Tr. 504. Plaintiff objects to the characterization of these findings as "wholly unremarkable" and again cites non-exam findings such as Plaintiff's weight, visits to an endocrinologist, and complaints of fatigue and pain. ECF No. at 8. Plaintiff also notes Dr. Madej prescribed medication and indicated that she is "[u]nable to lift anything more than 10 pounds, and is [v]ery limited in lifting overhead and bending." Tr. 504. However, the ALJ's conclusion that there is no apparent objective basis for Dr. Madej's opinion is a reasonable interpretation of the evidence.

Notwithstanding the foregoing, as discussed *supra,* the ALJ's finding regarding Plaintiff's symptom testimony is legally insufficient. Thus, although the ALJ reasonably found that Dr. Madej's opinions are unsupported by objective finding and are based more heavily on Plaintiff's self-report, the conclusion that Plaintiff's self-report is unreliable is flawed. On remand, the ALJ should consider

the impact of the new finding regarding Plaintiff's symptom testimony on the supportability of Dr. Madej's opinions and provide a new analysis.

2. *N.K. Marks, Ph.D.*

In March 2015, Dr. Marks examined Plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form with diagnoses of anxiety disorder and depressive disorder. Tr. 456-59. He assessed severe limitations in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; marked limitations in the ability to communicate and perform effectively in a work setting and in the ability to set realistic goals and plan independently; and numerous moderate limitations. Tr. 458. The ALJ gave minimal weight to Dr. Marks' assessment, except for the finding that Plaintiff has minimal or no limitations in her ability to persist with simple tasks. Tr. 27, 458.

First, the ALJ found Dr. Marks' "minimal degree of positive psychological findings are inadequate" to support his assessment, and that therefore his opinion is based on Plaintiff's unreliable self-report. Tr. 27. The amount of relevant evidence that supports a medical opinion is a relevant factor in weighing the opinion evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ noted Dr. Marks

observed Plaintiff was cooperative and polite and checked boxes indicating normal thought content, memory, concentration and judgment. Tr. 27 (citing Tr. 459). However, the ALJ overlooked findings that Plaintiff's mood and affect were discouraged and depressed; that while her short-term auditory memory was adequate, she had poor incidental memory and poor working memory; and that her fund of knowledge was poor. Tr. 459. Furthermore, Dr. Marks administered the Beck Anxiety Inventory and the Beck Depression Inventory, which resulted in scores indicating severe anxiety and depression, among other findings. Tr. 457. Although the ALJ is the arbiter of conflicts in the evidence, s*ee Morgan*, 169 F.3d at 599-600, the conclusion that Dr. Marks' opinion is unsupported based on the few findings considered by the ALJ is, without more, insufficient to constitute a specific, legitimate reason supported by substantial evidence.

Second, the ALJ found Dr. Marks' opinion is inconsistent with Plaintiff's caretaking activities. Tr. 27. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. However, as discussed *supra*, the ALJ's consideration of Plaintiff's role as caregiver is speculative and not based on substantial evidence. Thus, this is not a specific, legitimate reason for rejecting Dr. Marks' opinion.

### 3. *Greg D. Sawyer, M.D., Ph.D.*

In March 2015, Dr. Sawyer examined Plaintiff and diagnosed major depressive disorder and PTSD. Tr. 398-404. Dr. Sawyer found that Plaintiff

would not have difficulty in a number of functional areas but would have "some difficulty" with her ability to concentrate, her ability to maintain regular attendance in the workplace, and would have difficulty completing a normal workday or workweek without interruptions. Tr. 404. Dr. Sawyer opined that her main problems are fatigue and pain. Tr. 404. The ALJ gave Dr. Sawyer's opinion some weight where he indicated Plaintiff would not have difficulty in certain functional areas but gave minimal weight to the assessment of "some difficulty" or unspecified difficulty with concentration, persistence, and attendance. Tr. 27.

First, the ALJ found Dr. Sawyer did not explain the basis for these opinions and had no adequate objective basis for his assessment. Tr. 27. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ observed Dr. Sawyer's mental status exam findings include calm and cooperative behavior, normal eye contact, normal motor activity, normal speech, intact memory, average intelligence, logical thought process, and good attention span. Tr. 27, 401-402. Plaintiff notes she was described as candid, there was no evidence of exaggeration, she did not know the name of the governor or when the Declaration of Independence was signed, and did not know or qualified her answers about proverbs and similarities and differences. ECF No. 10 at 12; Tr. 401-03. However, the findings cited by

Plaintiff do not obviously relate to the limitations assessed by Dr. Sawyer. Furthermore, the ALJ noted that to the extent Dr. Sawyer's opinion includes limitations based on physical issues, Dr. Sawyer did not conduct a physical exam except to note normal gait, posture, and motor coordination and calm activity levels. Tr. 27, 398. Thus, the ALJ's reasoning is, in this instance, supported by substantial evidence.

Second, the ALJ found Dr. Sawyer made his assessment based in part on physical complaints which are beyond his expertise. Tr. 27. The ALJ does not identify which findings are beyond Dr. Sawyer's expertise. It is noted that Dr. Sawyer is a medical doctor and a psychologist and is therefore qualified to assess Plaintiff's medical and psychological condition. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (explaining that under general principles of law, a physician is qualified to give a medical opinion as to a claimant's mental state as it relates to her physical disability); *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (concluding a psychologist not qualified to opine regarding disability based on underlying physical conditions). This is not a specific, legitimate reason for rejecting the opinion.

Third, the ALJ found that other opinions are more reliable based on Plaintiff's activities, longitudinal exam findings, and treatment records. Tr. 27. This finding is insufficiently specific as it relates to Dr. Sawyer's opinion. It is insufficient for the ALJ to reject the opinion of a treating or examining physician

by merely stating, without more, that it is inconsistent with other evidence in the record.  *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  Thus, this is not a specific, legitimate reason for rejecting Dr. Sawyer's opinion.

### 4.  R.A. Cline, Psy.D.

In January 2017, Dr. Cline examined Plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form indicating diagnoses of major depressive disorder, moderate, in partial remission with medication, and PTSD in partial remission.  Tr. 550-54.  Dr. Cline opined that Plaintiff has moderate limitations in the ability to learn new tasks, the ability to be aware of normal hazards and take appropriate precautions, the ability to communicate and perform effectively in a work setting, and in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms.  Tr. 552-53.  The ALJ gave some weight to Dr. Cline's opinion that Plaintiff has no or mild limitations in some functional areas but found "no basis" for the moderate limitations assessed by Dr. Cline.  Tr. 28.

First, the ALJ found Dr. Cline's exam findings are an inadequate basis for the moderate limitations assessed, and that therefore the opinion is based on Plaintiff's unreliable self-report.  Tr. 28.  The amount of relevant evidence that supports a medical opinion is a relevant factor in weighing the opinion evidence.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  The ALJ observed that Dr. Cline observed Plaintiff's mood was "ok," and she was cooperative with a fair

affect, normal speech, memory, thought process, and concentrations. Tr. 28, 554. The ALJ determined Dr. Cline's examination was "essentially unremarkable" and that these findings are an inadequate basis for assessing moderate limitations in persistence or workplace performance. Tr. 28, 554.

However, the ALJ dismissed findings of impaired judgment and fund of knowledge and failed to acknowledge that Plaintiff's recall decreased rapidly with delay, and her insight and judgment were "limited" or perhaps intact at a basic level. Tr. 554. Dr. Cline administered the Beck Depression Inventory II with results indicating moderate to marked depressive symptoms, and Rey testing indicated above average level of effort and cooperation and a low likelihood of malingering. Tr. 551. The ALJ's characterization of the objective findings as "essentially unremarkable" and concluding that there is "no basis" for moderate limitations assessed by Dr. Cline is an overstatement of the record and indicates the ALJ's assumption that the opinion is entirely based on Plaintiff's self-report is inaccurate. Thus, the ALJ did not properly weigh Dr. Cline's opinion.

Second, the ALJ found Plaintiff's report of symptoms to another provider is inconsistent with her report to Dr. Cline. Tr. 28. An ALJ may discount a physician's opinion when a claimant's own statements differ from the medical opinion. *See Morgan*, 169 F.3d at 601-602; *Magallanes*, 881 F.2d at 751. The ALJ cites an office visit dated January 12, 2017, two weeks before Dr. Cline's

January 24, 2017, assessment, noting indications of mild depression.[6] Tr. 28, 541.

However, the fact that a claimant was not exhibiting certain symptoms at the time

of an appointment on a particular day does not indicate the claimant was not

experiencing those symptoms generally or at other times. *See Diedrich v.*

*Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017). Mental health symptoms wax and

wane in the course of treatment, and cycles of improvement and debilitating

symptoms are a common occurrence. *Garrison*, 759 F.3d at 1017. This one

instance of difference in symptoms is insufficient by itself to constitute a legitimate

reason for rejecting the moderate limitations assessed by Dr. Cline.

   *5. Marybeth Wheeler, ARNP*

   Ms. Wheeler completed a DSHS Physical Evaluation form in January 2017

and indicated diagnoses of chronic bilateral low back pain without sciatica causing

severe impairment; type 2 diabetes mellitus causing a mild impairment; essential

hypertension causing a mild impairment; major depressive disorder causing a mild

---

[6] The ALJ characterized the office visit as occurring "a few days earlier" than the

examination by Dr. Cline, which is not a reasonable characterization given that two

full weeks passed between appointments. Tr. 28.

impairment; PTSD causing a mild impairment; and hypothyroidism.[7] Tr. 537. She opined that Plaintiff is severely limited, meaning unable to meet the demands of sedentary work. Tr. 538. The ALJ gave minimal weight to Ms. Wheeler's opinion.

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than an opinion from a source who is not an acceptable medical source or who is a non-medical source. 20 C.F.R. § 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); *see* 20 C.F.R. § 416.092 (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants).[8] However, an ALJ is required to

---

[7] The form defines "severe" as the inability to perform one or more basic work-related activities; "mild" is defined as no significant interference with the ability to perform one or more basic work-related activities. Tr. 537.

[8] Effective March 27, 2017, the definition of an "acceptable medical source" changed to include some sources which were previously not acceptable medical sources. *See* 20 C.F.R. § 416.902. However, for licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants, the change

consider evidence from non-acceptable medical sources, such as therapists, 20

C.F.R. § 416.927(f), but may discount testimony from these sources if the ALJ

"gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1104.

First, the ALJ found Ms. Wheeler's statement is "expressly based on the

claimant's reports" which the ALJ found to be inconsistent with the evidence. Tr.

26. A physician's opinion may be rejected if it is based on a claimant's subjective

complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149;

*Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. However, the ALJ must provide

the basis for the conclusion that an opinion was more heavily based on a claimant's

self-reports than the medical evidence. *Ghanim*, 763 F.3d at 1162. The ALJ cites

the first page of Ms. Wheeler's evaluation in support of this conclusion. Tr. 26

(citing Tr. 536). The first page of the form completed by Ms. Wheeler asks for

information about the "[c]hief [c]omplaints and reported symptoms," and

"treatment history including hospitalizations." Tr. 536. The fact that Ms. Wheeler

supplied information about Plaintiff's complaints where requested does not mean

her opinion is "expressly based" on Plaintiff's complaints. Furthermore, as

discussed *infra*, Ms. Wheeler's exam findings were not addressed by the ALJ.

Thus, this is not a germane reason supported by substantial evidence.

---

applies "only with respect to claims filed . . . on or after March 27, 2017"). 20

C.F.R. § 416.902(a)(6)-(8).

Second, the ALJ suggests that Ms. Wheeler's exam findings are inconsistent with her opinion. Tr. 26. A discrepancy between a provider's clinical notes and observations and the provider's functional assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. The ALJ cited Ms. Wheeler's notes that Plaintiff had normal gait and lower extremity sensation. Tr. 548. However, the ALJ did not address exam findings of limited lumbar spine range of motion of ten degrees to the right and left, ten degrees for extension, and 45 degrees for flexion. Tr. 539, 548. These objective findings could reasonably be construed to support the limitation assessed regarding Plaintiff's low back pain. Thus, the ALJ's dismissal of Ms. Wheeler's opinion without addressing those findings means rejection of the opinion on this basis is not supported by substantial evidence.

**D. Lay Witness Statements**

Plaintiff contends the ALJ failed to properly assess the lay witness statements. ECF No. 10 at 15-17. The record contains statements from Plaintiff's brother Keith, son Donavan, friend Jeanne, and friend Kathleen. Tr. 291-98, 321, 338-40. Plaintiff's brother Keith indicated that he observed nightmares, depression and PTSD, and that he observed Plaintiff needing to take breaks from driving to walk and stretch her back and legs. Tr. 338. He described an instance where Plaintiff used a wheelchair due to weakness in her legs and difficulty walking, and an instance when he called her for two days without getting answer and later found out

she had been asleep. Tr. 338. Plaintiff's son Donavan reported observations of nightmares, instances when Plaintiff would sleep for two to four days, and noted she has problems with her back, legs, and arms. Tr. 340.

Plaintiff's friend Jeanne indicated that Plaintiff has limited mobility because of her back injury; she has trouble walking, sitting, bending, and lifting due to back pain; she cannot stand for a long time and needs to take breaks to sit; she lifts only five to ten pounds; has difficulty with memory, completing tasks, concentration, understanding, and following instructions. Tr. 291, 293, 296. Plaintiff's friend Kathleen reported attending a concert with Plaintiff in September 2015 and observed Plaintiff taking multiple breaks from walking and standing due to leg pain. Tr. 321.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1460, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

The ALJ gave some weight to the lay witness statements to the extent they are consistent with the evidence of Plaintiff's physical and psychological impairments. Tr. 25. However, the ALJ also repeated earlier findings regarding objective evidence, resolution of symptoms with medication, and her role as

caregiver without tying those findings to the lay witness statements and without demonstrating that they are germane to each witness. Further, some of the ALJ's reasoning regarding those findings was based on error, as discussed throughout this decision. As a result, on remand, the lay witness statements also need to be reconsidered.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. On remand, the ALJ should consider all of Plaintiff's medically determinable impairments and demonstrate that they have been considered in formulating the RFC; should reconsider Plaintiff's symptom claims; should reevaluate the medical and psychological record and opinions; and should reconsider the lay witness statements. The Court does not direct that any medical opinion or particular evidence should be credited, only that the ALJ reconsider the sequential evaluation in light of the insufficient findings identified herein.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

1

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order

2 and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file

3 shall be **CLOSED**.

4 **DATED** March 10, 2020.

5 *s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON

6 United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21